IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| VIDEOLABS, INC., § | |
| § | |
| Plaintiff, § | Case No. 6:21-cv-456-ADA |
| § | |
| v. § | |
| § | |
| DELL TECHNOLOGIES, INC. and DELL § | |
| INC., § | |
| § | |
| Defendants. § | **REDACTED VERSION** |
| § | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR INTRA-DISTRICT TRANSFER OF VENUE**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. RELEVANT BACKGROUND ............................................................................................. 1

III. ARGUMENT ......................................................................................................................... 1

   A. The *Cost* of Attendance for Willing Witnesses Weighs Against Intra-District Transfer ... 2

      1. Defendants' Arguments Regarding the Cost of Attendance for Willing Witnesses Are Inapposite, and the Veracity of Defendants' Declaration Regarding Witnesses in the Austin Division is Highly Questionable ................................................................................................. 6

   B. Relative Ease of Access to Sources of Proof Weighs Against Intra-District Transfer ....... 9

   C. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive Weigh Against Intra-District Transfer .................................................................. 11

   D. Administrative Difficulties Flowing from Court Congestion Weigh Against Intra-District Transfer ..................................................................................................................................... 12

   E. Local Interest Weighs Against Intra-District Transfer ...................................................... 13

   F. The Remaining Factors Do Not Support Transfer ............................................................ 14

   G. Defendants' Reliance on the *Radmax* Case is Inapposite. ................................................ 14

IV. CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Adaptix, Inc. v. Verizon Wireless*,
  No. 15-CV-00045, Dkt. 32 (E.D. Tex. Aug. 12, 2015) .............................................................. 6

*Ancora Tech., Inc. v. LG Electronics Inc.*,
  1:20-CV-0034-ADA, Dkt. 272 (W.D. Tex. June 2, 2021) ......................................................... 9

*Copeland v. City of Killeen*,
  No. A-10-CA-338-SS, 2010 WL 2732532 (W.D. Tex. July 8, 2010) ........................................ 6

*Datascape, Ltd. v. Dell Technologies, Inc.*,
  No. 19-CV-00129-ADA, 2019 WL 4254069 (W.D. Tex. June 7, 2019) ................................... 6

*Diem LLC v. BigCommerce, Inc.*,
  No. 17-CV-00186-JRG, 2017 WL 6729907 (E.D. Tex. Dec. 28, 2017) .................................... 6

*Durrett v. Walmart, Inc.*,
  No. 18-CV-00332, 2018 WL 5630521 (E.D. Tex. Oct. 31, 2018) ............................................. 6

*Fintiv, Inc. v. Apple*,
  No. 18-cv-372-ADA, 2019 4743678 (W.D. Tex. Sept. 13, 2019) .............................................. 6

*Future Link Sys., LLC v. Advanced Micro Devices, Inc.*,
  No. 6:20-cv-01176-ADA, Dkt. 54 and 62 (W.D. Tex. Oct. 12, 2021) ............................... 10, 13

*Impulsora de Marcas e Intangibles, S.A. de C.V. v. Dos Amigos, Inc.*,
  No. 19-cv-00453-ADA, 2020 WL 4577712 (W.D. Tex. Apr. 9, 2020) ..................................... 6

*In re Apple*,
  979 F.3d 1332 (Fed. Cir. 2020) ................................................................................................ 12

*In re Genentech Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ............................................................................................ 3, 12

*In re Juniper Networks, Inc.*,
  No. 2021-156, 2021 WL 4519889 (Fed. Cir. Oct. 4, 2021) ..................................................... 12

*In re Radmax, Ltd.*, 720 F.3d 285 (5th Cir. 2013) ........................................................................ 14

*In re Volkswagen of America, Inc.*,
  545 F.3d 304 (5th Cir. 2008) ..................................................................................................... 1

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods, LLC*,
  No. 09-CV-00488, 2009 WL 2634860 (N.D. Tex. Aug. 26, 2009) ........................................... 6

*ParkerVision, Inc. v. Intel Corp.*,
  No. 6:20-CV-00108-ADA, 2021 WL 401989 (W.D. Tex. Jan. 26, 2021) ............................... 11

*Realtime Data, LLC v. Rackspace US, Inc.*,
   No. 16-CV-00961, 2017 WL 772653 (E.D. Tex. Feb. 28, 2017) .............................................. 6

*Solas OLED Ltd. v. Apple Inc.*,
   No. 19-cv-537-ADA, 2020 WL 3440956 (W.D. Tex. June 23, 2019) ................................. 6, 13

*Super Interconnect Tech. v. Google LLC*,
   No. 6:21-cv-00259-ADA, Dkt. 49 at 17 (W.D. Tex. Nov. 5, 2021) .................................. 11, 12

*VLSI Tech. LLC v. Intel Corp.*,
   No. 1:19-CV-00977-ADA, 2020 WL 8254867 (W.D. Tex. Dec. 31, 2020) ........................ 8, 11

**I.      INTRODUCTION**

The Waco Division is a fertile ground of relevant witnesses, sources of proof and local interest. It is also a courthouse that presents fewer practical problems and administrative difficulties to expeditiously resolving this matter.

Defendants ignore all of this and make the patently false assertion that "this case has no connection to the Waco Division," an assertion they make repeatedly throughout their motion. Dkt. 28 at 1. The only support for this assertion is a conclusory and highly questionable declaration that venue discovery confirmed has multiple mistakes, if not outright falsities.

Defendants cannot carry their burden that the Austin Division is "clearly more convenient" than the Waco Division. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). In this case, it is the Waco Division that is clearly more convenient.

**II.     RELEVANT BACKGROUND**

VideoLabs alleges infringement of three patents in these two consolidated cases. Dkt. 34, 35. U.S. Patent Nos. 7,769,238 and 8,139,878 concern content adaptive variable length coding (CAVLC) that is performed in connection with graphics processing in Dell personal computers (e.g., Intel processors). *See, e.g.*, Dkt. 1 at ¶¶ 10-11, 14, 17-22. U.S. Patent No. 7,970,059 concerns context adaptive binary arithmetic coding (CABAC) that likewise is performed in connection with graphics processing in Dell personal computers. *See, e.g.*, Case No. 6:21-cv-932, Dkt. 1 at ¶¶ 10, 13, 16-20. The "Accused Products" are many lines of Dell desktops, laptops, 2-in-1 laptops, tablets, workstations, thin client, and servers. Ex. A at 4-6.

**III.    ARGUMENT**

As demonstrated below the relevant factors strongly favor denying intra-district transfer.

| Factor | Division |
|---|---|
| Relative ease of access to sources of proof | Weighs against transfer |
| Availability of compulsory process to secure the attendance of willing witnesses | Neutral |
| Cost of attendance for willing witnesses | Weighs against transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Weighs against transfer |
| Administrative difficulties flowing from court congestion | Weighs against transfer |
| Local interest | Weighs against transfer |
| Familiarity of the forum with the law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

A. **The *Cost* of Attendance for Willing Witnesses Weighs Against Intra-District Transfer**

Defendants and their declarant swore up and down there were no witnesses in the Waco Division. Dkt. 28 at 6 ("No party has any connection to the Waco Division."), 7-8 ("Many of Dell's relevant *marketing employees* are also located in Austin Division, and again, *none are located in the Waco Division*.") (emphasis added); Dkt. 28-1 at ¶ 9 ("I am further not aware of, and Dell also has not identified, any employees who are located in the Waco Division and who are involved in the procurement, marketing, or financial functions for the Accused Products."). Discovery confirmed these statements, arguments and averments are false.

There are many Dell employees that live in the Waco Division—at least ▮ Ex. B at 5-7; Ex. C, Dell_Videolabs_0000003. At leas ▮ of these employees have sales, marketing or finance roles related to the Accused Products (e.g., Dell personal computers) and are relevant to at least damages; many are relevant to infringement as well. Ex. D, Dell_Videolabs_0025949. Indeed, Defendants admit these types of witnesses are relevant but incredibly deny their existence. Dkt. 28-1 at ¶¶ 7, 9. But, as discovery confirmed, there are so many Defendant witnesses in the Waco Division that Defendants took the position that a Rule 30(b)(6) witness could not possibly relay the roles and responsibilities of these individuals with respect to the Accused Products. Ex. E (▮

2

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████).

Discovery confirmed that there are numerous relevant witnesses that live and work in the Waco Division. As such, this "single most important factor in [the] transfer analysis" weighs against transfer. *In re Genentech Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). For example, ██████ ██████ is a relevant marketing and sales witness that ███████████████████████ ███████████████████ Ex. F at 5:17-23; Ex. G, ████████ LinkedIn page. And his relevant knowledge expands beyond marketing the Accused Products: ████████ advises on how to ███████████████████████████████████████████████████████████████ ███████████ Ex. F at 6:4-8:3, 9:9-████████ is also tasked with ████████████ ███████████████████████████████████ *Id.* at 8:4-9:5. Each of these ██ ████████████████████████████. *Id.* ████████ is the ████████████ for ███ ████████████████████████████████████—which are ████████████████ *Id.* at 15:4-16:7. Thus, ████████ has knowledge, not just relevant to infringement, but to damages as well including, for example, Georgia-Pacific factors No. 6 (the effect of selling the patented specialty in promoting the sales of other products of the licensee); No. 8 (the established profitability of the product made under the patent, its commercial success and its current popularity); No.10 (the benefits to those who have used the invention); and No. 11 (the extent to which the infringer has made use of the invention and any evidence probative of the value of that use).

███████████████████████████████████████████████████████████ Ex. D, Dell_Videolabs_0025949 at rows 51, 85. First, ████████████████ who has a ██████

3

████ Ex. F at 18:3-25. Second ████ who has the ████ Id. at 19:8-20. Accordingly, Messrs ████ are relevant for the same reasons as ████

Another witness that has relevant knowledge is ████ who was deposed during venue discovery ████ is an account executive in Dell's retail organization sales group ████ Ex. H at 6:6-15. ████ lives in the Waco Division. Ex. D, Dell_Videolabs_0025949 at row 69 ████ He is responsible for ████ Id. at 8:13-18, 17:10-18:4, 18:24-21:24, 26:22-27:6, 29:2-30:18; Ex. A at 4-6. ████ Id. at 26:22-27:6. ████ also works with ████ Id. at 11:1-13:12 ████ Id. at 13:23-14:23.

Messrs. ████ are all part of the ████ at Dell. Ex. D, Dell_Videolabs_0025949 at rows 51, 85, 88. Defendants' Rule 30(b)(6) witness confirmed that this group is "what's relevant to this case." Ex. I at 15:25-16:4; 39:2-8.[1] Given the admission that employees of the Client Solutions Group are relevant to this case in both the declaration supporting Defendants' motion (Dkt. 28-1 at ¶ 7) and in Rule 30(b)(6) testimony, there are at least 20 more relevant witnesses who live in the Waco Division: ████

---

[1] Defendants' Rule 30(b)(6) witness was designated on topics 1-3 and 7 in VideoLabs' Rule 30(b)(6) deposition notice. Ex. E; Ex. J. This witness was also a declarant in support of Defendants' motion. Dkt. 28-1.

4

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████ Ex. D, Dell_Videolabs_0025949 at rows 9, 21, 32, 33, 35, 42, 43, 48, 52, 53, 59, 68, 75, 83, 98, 102, 112, 114, 115, 117. These witnesses consist of multiple engineers, sales managers and marketing professionals. *Id.*

There are also relevant finance witnesses that live in the Waco Division, but Defendants did not identify any finance related witnesses (by name or otherwise) in their motion. An issue in this case will be Defendants' revenue and costs information (e.g., costs of goods sold and component costs) and how to interpret that information. One or more witnesses will be needed to explain Defendants' financials. Defendants' Rule 30(b)(6) witness confirmed that people in the ████████████████████████████████████████████████ Ex. I at 42:6-13. Thus, the following witnesses are relevant to this case and live in the Waco Division: ████████████████████████████████████████████████████████████████████ Ex. D, Dell_Videolabs_0025949 at rows 22, 40, 49, 50, 70, 86, 92.

Finally, there are numerous members of the ████████████████████████████████ a business unit that is relevant because it is responsible for marketing the Accused Products. Ex. I at 41:4-42:3. These folks include ████████████████████████████████████████████████████████████████ Ex. D, Dell_Videolabs_0025949 at rows 11, 45, 57, 63, 80.

Based on the foregoing there are at least 36 relevant witnesses ████████████████ None of these witnesses will require lodging for a trial in the Waco Division and the cost of their attendance would be nominal at most.

Venue discovery is closed. Dkt. 38. Based on the record before the Court, 36 named witnesses reside in the Waco Division, while—at best—only seven named witnesses reside in the Austin Division. Dkt. 28 at 8. Given that only ***named*** witnesses count in the venue transfer analysis,[2] the abundance of relevant witnesses that reside in the Waco Division compared to the seven named witnesses in the Austin Division weighs heavily against transfer. This is especially true considering Defendants' highly questionable identification of witnesses in the Austin Division (discussed below).

### 1. Defendants' Arguments Regarding the Cost of Attendance for Willing Witnesses Are Inapposite, and the Veracity of Defendants' Declaration Regarding Witnesses in the Austin Division is Highly Questionable

The declaration regarding witnesses in the Austin Division (Dkt. 28-1) should be ignored as lacking in detail and credibility. When questioned about the declaration, the declarant testified that she had not done any other declaration in the past for Dell. Ex. I at 6:9-14 ("Q. Have you done

---

[2] *Copeland v. City of Killeen*, No. A-10-CA-338-SS, 2010 WL 2732532, at *4 (W.D. Tex. July 8, 2010); *Impulsora de Marcas e Intangibles, S.A. de C.V. v. Dos Amigos, Inc.*, No. 19-cv-00453-ADA, 2020 WL 4577712, at *4 (W.D. Tex. Apr. 9, 2020) ("The Court agrees with [Plaintiff] that [Defendant] has not met their burden of establishing that the convenience factors clearly favor transfer…[Defendant] argues that all of their witnesses are located in the SDCA, but they fail to point to any specific potential witnesses that may be used."); *see also Datascape, Ltd. v. Dell Technologies, Inc.*, No. 19-CV-00129-ADA, 2019 WL 4254069, at *2 (W.D. Tex. June 7, 2019) (quoting *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods, LLC*, No. 09-CV-00488, 2009 WL 2634860, at *6 (N.D. Tex. Aug. 26, 2009)) (finding this topic to be important and noting that the party had "not specifically identified a single witness by name and address"); *Fintiv, Inc. v. Apple*, No. 18-cv-372-ADA, 2019 4743678, at *8 (W.D. Tex. Sept. 13, 2019); *Solas OLED Ltd. v. Apple Inc.*, No. 19-cv-537-ADA, 2020 WL 3440956, at *4 (W.D. Tex. June 23, 2019) ("This Court still requires a plaintiff to demonstrate the potential relevance and materiality of potential witnesses and evidence rather than provide mere lists."); *Diem LLC v. BigCommerce, Inc.*, No. 17-CV-00186-JRG, 2017 WL 6729907, at *3 (E.D. Tex. Dec. 28, 2017); *Realtime Data, LLC v. Rackspace US, Inc.*, No. 16-CV-00961, 2017 WL 772653, at *10 (E.D. Tex. Feb. 28, 2017); *Adaptix, Inc. v. Verizon Wireless*, No. 15-CV-00045, Dkt. 32, at *11 (E.D. Tex. Aug. 12, 2015); *Durrett v. Walmart, Inc.*, No. 18-CV-00332, 2018 WL 5630521, at *3 (E.D. Tex. Oct. 31, 2018).

6

any other declarations in the past for Dell? A: No."). This is false. The declarant submitted two remarkably similar declarations *in this Court* in March and May 2021 in support of two other intra-district transfer motions by Defendants. *Compare* Dkt. 28-1 *with* Ex. K and Ex. L.

There are other reasons to ignore the declaration. Paragraph 7 admits that sales and marketing functions are relevant to this case and then paragraph 9 makes the following statement: "I am further not aware of, and Dell also has not identified, any employees who are located in the Waco Division and who are involved in the procurement, marketing or financial functions for the Accused Products." Dkt. 28-1. This averment is simply false based on the "marketing" and "financial" witnesses in the Waco Division identified above. It was not until VideoLabs took venue discovery and after ████████████████████████ that Defendants and their declarant (and 30(b)(6) witness) admitted statements in the declaration were incorrect about the presence of witnesses in the Waco Division. Ex. I at 26:20-27:13.

Another reason to ignore the declaration is the conclusory nature of paragraph 7 which says that seven witnesses in the Austin Division "have responsibility for relevant aspects of Dell's design, development, marketing, or sales" of the Accused Products. When asked in deposition, the declarant testified as to lacking *any* knowledge as to whether *any* of the identified Austin Division witnesses were involved in the "design or development" of the graphics processing functionality that is at issue in this case. Ex. I at 23:11-24:13. Thus, Defendants have not established that any of these seven witnesses were involved with the design or development of the relevant functionality. Moreover, the declarant could only identify one of the Austin Division witnesses as having some marketing role (albeit ████████████████████) in ████████ testimony during a redirect

7

examination after a meeting with counsel for Defendants. *Id.* at 44:15-45:14.[3] This is perhaps not surprising because ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 7:18-23. The only thing the declarant did to understand the roles of the seven witnesses listed was ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓ *Id.* at 14:11-23. The declaration does nothing to establish whether these individuals in fact have relevant knowledge. It is nothing more than a listing of names and titles and Dell's 30(b)(6) witness/declarant confirmed she had no additional personal knowledge. *Id.* at 16:6-14.

One of the seven purported Austin Division witnesses, Dalvis (aka Bernard) Desselle, is not a witness that should be counted as favoring transfer to the Austin Division even if he is found to be relevant. This witness ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. B at 8) and actually ▓▓▓▓▓▓▓▓▓▓ to the Waco courthouse than the Austin courthouse. *See* Ex. M.

While this factor concerns the ***cost*** of attendance of willing witnesses, Defendants provide no evidence on cost, instead making the unsubstantiated claim of "needless expenses associated with transit and housing." Dkt. 28 at 8. There is no need for lodging given the close distance of the two courthouses and, even if there were, lodging is less expensive in Waco than Austin. *VLSI Tech. LLC v. Intel Corp.*, No. 1:19-CV-00977-ADA, 2020 WL 8254867, at *4 (W.D. Tex. Dec. 31, 2020).

Defendants' "airport" argument (Dkt. 28 at 9) also fails. While no out of district witnesses have been identified, to the extent there are any, such witnesses can fly into Dallas, "which has a larger airport . . . than Austin," and make the short drive to the Waco courthouse. *Ancora Tech.,*

---

[3] This shows how blatantly Defendants misrepresented the facts in their motion when they stated "Many of Dell's relevant marketing employees are also located in the Austin Division, and again, none are located in the Waco Division." Dkt. 28 at 7-8. It is not "many;" at most just one was identified by name, but there are "many" in the Waco Division, as demonstrated above.

*Inc. v. LG Electronics Inc.*, 1:20-CV-0034-ADA, Dkt. 272 at *6 (W.D. Tex. June 2, 2021).[4]

Thus, all that is left with regard to cost is driving the six witnesses in the Austin Division to Waco. This is a nominal cost. The cost of regular gasoline in the Austin-San Marcos metropolitan area is $3.01 per gallon. Ex. N. Assuming Defendants' "160 mile roundtrip" argument and assuming 20 miles per gallon, the cost of travel per witness is $24.08 (i.e., 160 miles divided by 20 miles per gallon times $3.01 per gallon of fuel). All Austin witnesses could make it to Waco and back for less than $150.00. However, if this case was transferred to the Austin Division, then the Waco Division witnesses would have to incur the same expense going the other way. The reality is there is ***no added cost to willing witnesses having this case tried in Waco*** versus Austin. If anything, the cost would be greater in Austin, as numerous witnesses would be required to travel from the Waco Division to the Austin Division.

In light of the foregoing, the ***cost*** of attendance of willing witnesses weighs heavily against intra-district transfer. There are many relevant witnesses in the Waco Division and the cost of transportation for any Austin Division witness (the relevance of whom has not been established) is nominal. Indeed, Defendants have spent far more pursing transfer of this case than the actual cost of having Austin Division witnesses appear at trial in the Waco Division.

### B. Relative Ease of Access to Sources of Proof Weighs Against Intra-District Transfer

This factor weighs against transfer because there are sources of proof in the Waco Division. For example, ▓▓▓▓▓▓ who lives and works in the Waco Division—testified he ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[4] In the same vein, Defendants cannot argue (as they try on page 9) that the Austin Division is more convenient for their out of state witnesses because the out of state witnesses can work out of Defendants' Austin or Round Rock offices. Defendants identify no such witnesses and, if there were such witnesses, they can just as easily work from hotels in Waco or Austin as they can from non-resident offices.

████████████████████████████████████████████████ Ex. F at 11:8-16, 12:21-13:14. Defendants' witness declarant assumes that the purported Austin Division witnesses "are likely to have electronic documents relating to the Accused Products." Dkt. 28-1 at ¶ 8. The same is true for the scores of Waco Division witnesses. Moreover, given that Defendants' witnesses access much of their information ████████████ *see, e.g.*, Ex. F at 11:17-13:23), the information is equally *accessible* in both Divisions. With sources of proof located in and equally accessible from both Divisions, it cannot be said that this factor weighs in favor of intra-district transfer. When sources of proof are located in both Divisions, this factor should weigh against transfer or be neutral at best for Defendants.

Another problem for Defendants' argument is that their servers are primarily in Round Rock, Texas (Defendants' headquarters). Dkt. 28-2.[5] The Round Rock headquarters is an approximately 85 mile drive to the Waco courthouse and an approximately 20 mile drive to the Austin courthouse. Ex. O. This difference is truly meaningless, particularly when relevant information also resides in the Waco Division.

The Court recently found that this factor "only slightly" favors transfer when the electronic documents *only* reside on hardware in the Austin Division. *Future Link Sys., LLC v. Advanced Micro Devices, Inc.*, No. 6:20-cv-01176-ADA, Dkt. 54 and 62 at 12-13 (W.D. Tex. Oct. 12, 2021) ("Thus, this factor favors transfer, but only slightly—AMD would suffer little inconvenience from having to shuttle documentary evidence to Waco from Austin due to their proximity."). But this case is far different because there are sources of proof in the Waco Division, so this factor cannot favor transfer.

---

[5] Defendants have not identified any sources of proof in Austin that are not also in Round Rock.

10

## C. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive Weigh Against Intra-District Transfer

This factor weighs against transfer, as proceeding in the Waco Division would make this case easier, more expeditious, and less expensive. Defendants argue that this factor "strongly weighs in favor of transfer" only because (1) the case is at its early stages and (2) the Austin courthouse is open. Dkt. 28 at 9-11. But transferring the case would not change its stage. Moreover, the Waco courthouse is *also* open (and has remained so throughout the pandemic without the backlog of cases that exist in the Austin courthouse that resulted from its closure). *Super Interconnect Tech. v. Google LLC*, No. 6:21-cv-00259-ADA, Dkt. 49 at 17 (W.D. Tex. Nov. 5, 2021). Thus, even if Defendants' arguments were accepted as true, this factor would be neutral. But there are facts under this factor that weigh against transfer.

Trial in Waco would be less expensive that in Austin. While the "willing witness" factor considers only the cost to willing witnesses, this factor considers other costs that would make trial more expensive. The parties' experts and outside counsel will travel to trial, which will require lodging, and the Court found that "hotel costs are cheaper in Waco" than in Austin. *VLSI Tech. LLC*, 2020 WL 8254867, at *4. As such, lodging for the parties' experts and trial teams would be less expensive in Waco.

Moreover, to the extent the case is transferred and not kept on the docket of Judge Albright, proceeding before other courts in the Austin Division would be more difficult and expensive. Unlike courts in the Austin Division, "the Waco Division has its own patent-specific Order Governing Proceedings ('OGP') that ensures efficient administration of patent cases." *ParkerVision, Inc. v. Intel Corp.*, No. 6:20-CV-00108-ADA, 2021 WL 401989, at *7 (W.D. Tex. Jan. 26, 2021). The OGP streamlines patent cases and sets patent case-specific rules, allowing the parties' attorneys to expend fewer hours negotiating patent-specific deadlines and limits.

11

Moreover, Judge Albright has additional patent-specific rules that will streamline the case. For example, Judge Albright has a standing order on patent venue discovery as well as a patent-specific default protective order, both of which have already streamlined disputes and reduced the time expended by the parties' outside counsel. *See* Dkt. 29 (agreeing to venue discovery consistent with the Court's order); Ex. S (framing dispute for the Court in reference to the Court's default protective order). This factor weighs against transfer.

### D. Administrative Difficulties Flowing from Court Congestion Weigh Against Intra-District Transfer

This factor also weighs against transfer. The relevant inquiry for this factor is "[t]he speed with which a case can come to trial and be resolved." *In re Genentech Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009); *In re Apple*, 979 F.3d 1332, 1343 (Fed. Cir. 2020). Statistics confirm that cases filed in the Western District had an average time to trial of 972 days, exceeding the time to trial in the Waco Division by nearly **300 days**. Ex. P (Docket Navigator Statistics for patent cases in W.D. Texas and Judge Albright from 2008 to 2021); *In re Juniper Networks, Inc.*, No. 2021-156, 2021 WL 4519889, at *3 (Fed. Cir. Oct. 4, 2021) (the analysis "looks to the . . . the actual average time to trial"). If Judge Albright's cases were removed, the nearly 300-day gap would be even larger. Moreover, the administrative difficulties in conducting an efficient and speedy trial are an even greater challenge now in the Austin Division, which did not conduct jury trials for over a year. Ex. Q (Fifteenth Order Relating to Entry in Austin Courthouse). Meanwhile, the Waco Division has conducted "at least nine jury trials, eight of which are patent jury trials" since October 2020. Ex. R, *Super Interconnect Tech. v. Google LLC*, No. 6:21-cv-00259-ADA, Dkt. 49 at 17 (W.D. Tex. Nov. 5, 2021). The backlog caused by closure of the Austin courthouse would only exacerbate the lengthy time to trial in the Austin Division.

Court congestion in the Austin Division, which has one of the highest caseloads per judge

in the country, is a practical reality. The Court previously found that the caseload in the Austin Division distorts the statistics for the overall time-to-trial in the Western District of Texas because the congestion is so high in the Austin Division. *Solas OLED Ltd.*, 2020 WL 3440956, at *7 ("Since the Austin Division has one of the highest caseloads per judge in the country."). While the Court recently noted that it is unclear whether Federal Circuit precedent requires (or even allows) analysis of caseloads per judge, to the extent these facts are relevant, this factor weighs even more heavily against intra-district transfer. *See Future Link Sys., LLC v. Advanced Micro Devices, Inc.*, No. 6:20-cv-01176-ADA, Dkt. 54 at 15-16 (W.D. Tex. Oct. 12, 2021).

In one sentence, Defendants argue this factor is neutral because the Austin courthouse is open. Dkt. 28 at 12-13. But this is not the proper inquiry. Given the statistics regarding the time to trial in the two Divisions and the backlog in the Austin Division induced by the pandemic—which had little effect on the Waco Division—this factor strongly weighs against intra-district transfer

### E. Local Interest Weighs Against Intra-District Transfer

Defendants' argument regarding local interest is a single conclusory paragraph on pages 11-12 of their motion. Dkt. 28. And really all it says is that (1) Defendants' principal place of business is in the Austin Division (i.e., in Round Rock) and (2) the "Waco Division does not have a local interest that is apparent from the Complaint or the litigation in this case to date." *Id.* at 12. Defendants cannot stick their head in the sand, fail to investigate their own local interest in the Waco Division and declare there is none. As demonstrated above, Dell employs ▮▮▮▮ of people in the Waco Division, many of whom are relevant to this case. Thus, there is a local interest in both Divisions. When there is a local interest in both Divisions, this factor should weigh against transfer or, at best for Defendants, be a neutral factor.

As discussed above, venue discovery is closed and the record before the Court is fixed. Dkt. 38. On the record before the Court, there are far more relevant witnesses in the Waco Division

13

than the Austin Division. Moreover, the short, often incorrect, declaration regarding the purported Austin Division witnesses (Dkt. 28-1) should be disregarded. But even if it is not, the record before the Court in this case demonstrates a stronger local interest in the Waco Division. Accordingly, this factor weighs against transfer.

### F. The Remaining Factors Do Not Support Transfer

The parties agree that the following factors are "neutral" and therefore do not support transfer: (1) availability of compulsory process to secure the attendance of willing witnesses; (2) familiarity of the forum with the law that will govern case; and (3) problems associated with conflict of law. *See* Dkt. 28 at 12-13.

### G. Defendants' Reliance on the *Radmax* Case is Inapposite.

Defendants cite the *Radmax* case six times in twelve pages. Dkt. 28 at Table of Authorities. *In re Radmax, Ltd.*, 720 F.3d 285 (5th Cir. 2013). But *Radmax* merely stands for the proposition that intra-district transfer is appropriate when the transferor forum has no connection to the case. *Id.* at 290. That is not the case here. There are many relevant witnesses and sources of proof in the Waco Division as detailed above. Accordingly, *Radmax* is not a harbor for Defendants' incorrect transfer arguments that blindly ignore the deep connections of this case to the Waco Division.

## IV. CONCLUSION

For at least the foregoing reasons, intra-district transfer should be denied.

Dated: November 12, 2021

By: /s/ *M. Elizabeth Day*

FEINBERG DAY KRAMER ALBERTI LIM TONKOVICH & BELLOLI LLP
M. Elizabeth Day (*pro hac vice*)
eday@feinday.com
David Alberti (*pro hac vice*)
dalberti@feinday.com
Sal Lim (*pro hac vice*)
slim@feinday.com
Marc Belloli (*pro hac vice*)
mbelloli@feinday.com
Jerry D. Tice II
Texas Bar No. 24093263
jtice@feinday.com
577 Airport Blvd., Suite 250
Burlingame, California 94010
Tel: 650-825-4300
Fax: 650-460-8443

Wesley Hill
Texas Bar No. 24032294
wh@wsfirm.com
Andrea L. Fair
Texas Bar No. 24078488
andrea@wsfirm.com
Claire Abernathy Henry
Texas Bar No. 24053063
claire@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
Tel: 903-757-6400
Fax: 903-757-2323

*Attorneys for Plaintiff*
VideoLabs, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via CM/ECF. I also hereby certify that, if filed under seal, all counsel of record will be served by electronic mail on November 12, 2021, pursuant to L.R. CV-5.2.

/s/ *M. Elizabeth Day*